The next case to be argued is 2008-1205, Celerity v. Ultra Clean. There are several issues raised in our brief and I'd like to discuss a handful of those today starting first and foremost with the claim construction issue. I've got to say, Mr. Andre, that I found your brief very difficult to understand as well as finding it very difficult to understand the opponent's brief on these claim construction issues and on the question of whether there was substantial evidence. I don't understand, for example, what common surface you're arguing for under the claim. It really is very confusing to me. I would have thought the common surface was the surface of the plate, but that doesn't seem to be what the parties are arguing about. There are two common surfaces, Your Honor, in this case. The first one being on the manifolds where the inlet and the outlet are on a common surface and the second one is on the bridging component where the inlet and the outlet of the bridging component are on a common surface as well. But isn't the common surface referring to the surface of the plate, that is, the plate is the manifold, right? It is a manifold, that's correct. Because there are holes in it and the gas moves through the holes. That's correct. So the invention of the 215 patent discusses a way of making manifolds by drilling holes in stainless steel blocks. And the reason you'd want to do that is because you have a solid block without any type of for the gas to go through the channel. So having an inlet and an outlet on a common surface eliminates the needs for any type of seals. Now originally the district court construed common surface to be the same surface. The surface of what? I mean, are we talking about the surface of the manifold, of the block, of the plate? Both, Your Honor. The manifold is a block. It's a block with holes drilled in it. But we're talking about the surface of the block being the common surface? Yes. So our argument was the manifold is a one-piece block with holes drilled in it, V-shaped holes. You have an inlet and outlet on that block, so it's a common surface on that block itself. There's also a bridging component, which they call a jumper block, and it also has a common surface on those blocks as well. So what we're talking about is something that's a continuous undivided surface, has an inlet and outlet on that surface. But the claim doesn't say that the inlet and outlet have to be on that surface. The claims do say that a common surface with an inlet and outlet on that surface. That's not in fact what they say. But what they talk about is... They talk about the inlet and the outlet accessing the common surface. They don't talk about the inlet and the outlet being on the common surface. I think the way it has been interpreted in this case is when you access a common surface, it has to be on the common surface. So both parties have assumed that? That's how the case was tried, that's correct, Your Honor. So the lower court originally defined that as the same surface. And then on the original construction, on the eve of trial... So what's the problem here? Is that the accused device, is the inlet and the outlet are not on top of the block? Is that the point? It's on two different blocks. Actually it's in a U-tube. So the accused device is actually a U-tube that has an inlet over here and an outlet over here. It's on two completely different surfaces. It's not a common surface at all. It's on the same plane, but it's not on the same surface of a block. Because the two pieces of the manifold is in two different pieces, is that the idea? No, the manifold in this particular case we believe is an entire gas stick. It's multiple pieces. Well, then what's the separation? The separation is the actual U-tube itself. No, no, no. You say that they're two, it's a common plane, but two separate surfaces because they're divided. Could you show us where there's a picture of the accused device that helps us to understand what the separation is? We have it in the appendix and my colleague will pull that up and we'll give you that site. It is a U-shaped device. Forget about the U-shaped device. I'm trying to understand what the issue is about the common surface. You're saying that the inlet and the outlet aren't on a common surface because the two are divided. Is that what you're saying? That's correct. If you look on page 12 of the initial brief, you'll see how the U-tube is set between two support devices. You'll see how on page 12 there's a photograph. There are three pictures there. The top picture is probably the clearest picture. There's a cutaway. You'll see a U-tube with an inlet on this surface. I can't understand what you're talking about. Where's the inlet? The inlet is right here on the first part of this U-tube going down and then transversing across and coming back up to the outlet. What's your theory? Where's the common plane issue here? Excuse me? Where's the common plane between the two? They're on the same plane. For example, these two tables are on the same plane. They're not on the same surface. I just don't understand how it relates to this picture. Is the left-hand thing and the right-hand thing, those are divided? Yes, those are divided. Where is the common plane? If you were to look at the inlet and the outlet of this U-tube, they are on the same longitudinal plane. They're on two different surfaces. Even though the surface is not continuous. That's right. They're on two different surfaces. That was the point about the claim interpretation. When the district court went back and revisited it and put in the language... It would have been better if the district court had probably stated it as a common plane type of an identification rather than a common surface. Actually, the patentee proposed that construction and the district court rejected it. It would make it much clearer, at least, as to understanding what the structure is on that basis. I believe it would have been a clear definition because the definition provided... Would you object to it? I would object to it, yes. The intrinsic record doesn't indicate that. The intrinsic record indicates that the common... Let's look at figure 20. I believe this is what your opponent suggested. It's a disclosure in the patent figure 20. It's located at A22, I think, of your blue appendix. Now, where on this figure can you show me the inlet and the outlet? On figure 20 of the patent, in this figure, you'll see three separate manifolds. Those are the blocks. It's hard to see the separation between the first and second one. Now, does the patent itself refer to these as three separate manifolds? Yes, it does. Those are manifold blocks. This is a cutaway. You see those little V channels in the cutaway. Those V channels are drilled into the block. Each one of those has an inlet and an outlet on those V channels. Each one of those inlet and outlets of that V channel is on the common surface. It's on the block itself.  What are the numbers of the inlets and the outlets? Well, there are literally almost a dozen inlets and outlets on here. Every time you see a V channel cutaway in that block. What do you mean by V channel? There's an inlet and an outlet? Well, it depends on the flow of the gas. If the gas is flowing left to right, the inlet will come here, the outlet will go out. The inlet, then the outlet. If the gas is going the opposite direction, it could be the inlet and outlet. It's a reversible. Well, it could be. There's no indication which way the gas is flowing here. It is usually presumed that it's flowing left to right because you see an inlet here earlier on. Are all these little circles here inlets and outlets? Is that your theory? That connect the V blocks, that's correct. Like 1308 is an inlet or an outlet? No, that would be something that is holding a bolt down. Are you talking about 1340? We obviously don't understand. 1324 is the first figure on the left-hand side. That's a V channel drilled into the block. And 1340 would similarly be one. That would be one going to a transverse direction, that's correct. Then I do understand. So 1324 is a V channel that's drilled into the block. There's an inlet going into that channel, going into the block, and an outlet coming out. The reason you have that is because on top of this block you put in active devices that purify the gas. These are all from manufacturing. All you're trying to do at the end of the day is run gas from one end of this stick to the other end and get a purified gas out. How you do that is by putting active devices on top of it. So as gas starts running through this device, you have active devices sitting on top of these manifold blocks. So the device would be sitting on top of 1350 and 1352. Yes, that's correct. So it's sitting between, it's bridging those two, the outlet of one V channel and the inlet of the other. So it just kind of lets it transverse through the actual manifold block itself. Of course, the problem with the quartz plane construction was that it has a divided same surface, which doesn't make, it's a mutually exclusive term. There's no way you can have a divided same surface. It would be two different surfaces. But you have the same plane. So what you're objecting to is that he basically said the inlet and the outlet have to be in the same plane rather than on the same surface, undivided surface. Well, that would have been an objectionable claim construction, as said to Judge Garsha. But the claim construction that was used in the trial was this divided surface. The same surface that's divided. That's essentially saying that the common plane satisfies the claim limitation. That's correct. Because what they, a good analogy I would say would be these. So what was wrong with that construction? Because it was actually disavowed. In that construction, we argued at the lower court, saying that there was no intrinsic record for that and it was actually disavowed. Because if you had a common plane, you'd have to have some type of gaskets and some type of seals. And what was argued here is that you want to have a solid block with holes drilled in it. I don't understand what you're saying. If you take a common plane, for example, I keep going back to these tables because these are on the same plane, same longitudinal plane. You could have inlet and outlet here, but there's a gap between them. Yeah, so what's wrong with that? Because gas can escape this gap. You have to create a seal, but if you put these two tables together, you'd have to seal them in some way. And the idea behind the invention was to get away from seals. You wanted to make this as a one-piece block with holes drilled in it. That was the whole idea behind this invention. But doesn't the 215 specification really contain a statement to the effect that the structure has a common surface, even though the surface is not continuous? No, I don't think... Is that what the lower court said? No, no. The reason that the lower court went with the divided common surface, despite applying the no common sense approach to that, was that there was a jumper block that was used in there. You see it here as 1344 on this figure that we were just referring to. That's not a bridge? It's a bridging component. This bridge, there are claims that the bridging component has a common surface as well. Now there are other bridging components like 1334 that do have a common surface, but this U-tube that's a bridge that's clearly on two different surfaces, the court used that as a basis for saying that the same surface can be divided. A common surface can be two different surfaces. What's wrong with that? Well, you have to completely take the plain import of the term common surface and throw it out the window. The idea here is to have a common same surface. So you can't have a same surface that's divided because then it's two different surfaces. It's mutually exclusive. The whole idea behind this invention is to have a single manifold block. That's the reason we also contested the interpretation of manifold. I don't understand that because this figure 20 shows three separated blocks, right? There's a first manifold, a second manifold, and a third manifold. That's correct. Each one of them have input and outputs accessing a common surface. At no point is there an input and output on any of those blocks. The access between the first manifold and the second manifold, they always are on the common surface, not on the common plain. They're on the common surface. So the court's claim interpretation in this particular instance was ignoring the intrinsic record completely. I'd like to reserve the rest of my time. Using your example, then, you're saying that everything would have to be on one table or the other, even though both tables are on the same plain. That's correct. The inlet and the outlet would have to be on the same table. That's correct. That is the essence of this invention. It has to be on the same... If this was one manifold block and that was another, inlets and outlets have to be on the same block, the same surface. The specification clearly discloses two or multiple piece manifolds. So how can you have multiple separate pieces and fit those embodiments within the claims as you would like them to be interpreted? The specification doesn't say the first manifold and the second manifold, but they're always one piece manifolds. Every reference in the specification always talks about being a one piece manifold. But the claims don't. The claims in this particular patent only say manifold. So why are we construing one piece manifold? Why do we have a claim construction of a term that doesn't appear in the claims? Because the way manifold is used throughout this entire specification, it's used interchangeably with one piece manifold. They're used synonymously. That's the only way manifold is defined in this entire patent. So we have to really take a look at the entire series of patents and determine whether or not there's only a single manifold or multiple manifolds? Because in some of the other patents that are part of the same family, they do speak to multiple manifolds and otherwise. There are multiple manifolds made in a single piece. The key here is having the stainless steel block and the manifold being made in one piece. So if you were to look at the other patents in which the court did find that one piece manifold is specifically claimed, then there's a definition for that. And our argument was manifold and one piece manifold had to be used interchangeably. The definition given to manifold in this case could be a garden hose. It was so broad it was just anything with openings and closings, an augustic look.  But don't we have to give the word manifold its plain meaning? I don't see in the specification the definition you want. I just see antecedent basis. That's all I see in the spec. When they say the manifold, they're just referring back to the one they had previously discussed. But I don't see them defining the word manifold clearly and unmistakably as a one piece manifold anywhere in the specs. Maybe you have a written description argument, but I don't see a claim construction argument. As it relates to claim construction, the manifold, you talk about the antecedent basis, they're always referring back to the one piece manifold. That's correct. So every time they mention the manifold, they're talking about the one piece manifold. But you don't import that limitation into the claims. There's nothing in the claims that says one piece and then refers back to the manifold, in which if it did, I would agree with you completely. But patentees are free to claim any way they want. We don't import limitations from the spec into the claim. I agree with that. But there's also some very compelling case law that states that if the only description is a one piece manifold, and that's the only thing that's described throughout the entire specification, throughout the prosecution, and throughout the entire family of patents, that if all it is talked about is a one piece manifold, you cannot then say, and they use manifold and one piece interchangeably. That's the only type of manifold that's ever discussed in every example, in every patent in this family. Then it's proper to read that manifold as a specific type of manifold. What are you saying here? In our table example, the judge treated the two separate tables as part of the same manifold so that he could find the inlet and the outlet on the same plane? No. No? The same plane was rejected by the district court. The same plane concept was rejected altogether. I don't understand what the significance of whether it's one piece manifold or two piece. How does that relate to the accused device here? What is the point? The accused device is made up of multiple pieces. Like two separate tables you mean? No. In this particular instance, it would be 15 blocks of wood put together to form a table. It was separated by welds. It took just a tube and connected it to the active device we talked about. One tube connected to the other tube with micro fits and welds throughout and then some support blocks. What's the significance of whether it's a one piece manifold or not? The district court actually found non-infringement for the patents on summary judgment based on the one piece manifold. That's just that you keep saying the same thing. In terms of the accused device, what's the point of whether it's one piece or multiple pieces? The inventive concept said it had to be a one piece so you eliminate welds and seals. Is that because if it's two separate pieces, you have the inlet and the outlet on different surfaces? That would be one reason. If I understand your argument, you want us to construe the claim to be limited to a one piece manifold because then there's no infringement because the manifold at issue, the accused manifold, is made up of multiple components. That's correct. As far as common surface, we just want to have this plain import. The common surface is the same surface that's continuous and undivided. That's just common sense. If you look at common surface, it has to be interpreted in a way that would give that term true meaning. To say that a common surface can be two different surfaces. Do you have one more issue that you want to discuss with us? Very briefly, I won't talk too much about the non-infringement, but the realignment that happened in this case. I think this is an important issue because of the fact that we were a DJ plaintiff instead of a defendant in this case. I believe that is abusive discretion. But they sued two of you in Delaware and when the cases were consolidated, you may have been a DJ plaintiff, but the other of the two defendants was not a DJ plaintiff. How can we say it was an abusive discretion for the district court judge to align them the way they did? Maybe they would come screaming back and tell us it was an abusive discretion under their circumstances because they clearly were the first to file against one of the two of you. It seems to me if we were to say it was an abusive discretion for you, we'd have to say it was an abusive discretion for them to throw the baby out with the bathwater. In this particular instance, the Micron case is very instructive on this because Micron is right on point here. They actually sued Ultra Clean Technology Systems Services who was the DJ plaintiff. They also sued a related company that was not an operational company. It was just a corporate entity that had no operations. They sued that company and then dismissed them in the case voluntarily and they went to trial against Ultra Clean Holdings. So they named a phantom defendant and then dropped them because they were doing nothing. As Micron stated, the Micron case, you can't just add additional parties or additional claims to try to avoid being a DJ defendant. If that was the case, that would be a surefire route to become plaintiff every single time. You would take the Declaratory Judgment Act and stand on its head here. Do you present evidence to the district court to suggest that they had a nefarious intent when they sued the other defendant in this case? I'm not going to try to get into someone's mind, but I will say that it would be an easy way to get around it. To sue another related company and then try to drop them. In this particular instance, they sent a threatening letter. My client DJ'd them in North District, California. They waited two weeks. They filed their case in Delaware in which they added another defendant. Same patents, exact same claims. Just added another defendant which was a shadow defendant because that defendant had no operations. You said that defendant has been dismissed? I mean, aren't they listed here as an appellant on the blue brief? That's how the briefing came in, but they were dismissed prior to trial. That defendant was gone. So that trial was on Ultra Clean Technology System and Services. Why is their name still on the blue brief? I think that was just the title that came through. That was the title we provided. They were dropped prior to and we did not appeal on their behalf. They were still part of a related family. What are they, a holding company? A holding company. In this particular instance, we did actually show the miscarriage of justice for two reasons. The first being, obviously, the Declaratory Judgment Act. The second one being that the empirical evidence we cited from Judge Moore's paper, which was Professor Moore before she was appointed to the court, saying that in 68% of the cases where the patentee is plaintiff, they won the case. Where the patentee is the DJ defendant, I guess 38% of the time they won. So there was empirical evidence showing that we were prejudiced by that realignment. But as I suggested in that paper, there are lots of potential alternative explanations for that. It could be who goes first matters. It also could be the person who got to pick is the one that matters. So there could be lots of alternative explanations for... Absolutely. We actually put forward two bases for the reason we believe there was evidence to show that there would be miscarriage of justice. First, you take the Declaratory Judgment Act and make it essentially meaningless by letting a patentee become plaintiff. And second... But it's not meaningless. You got to pick the forum. You got to have the case where you wanted to. You didn't get the result you wanted, but you got to have the case where you wanted to have it. It's not meaningless. What case says that the district court doesn't have discretion to realign if it chooses? The district court obviously has discretion to realign. What case says that this kind of realignment is erroneous? The Genentech case is probably most important and perhaps Micron that followed Genentech. Genentech actually said if you were to do this type of realignment and put the defendant, the D.J. plaintiff as a defendant, that would be a... The judge here at least tried to attenuate and ameliorate some of the issues that you were trying to raise by identifying neither party as plaintiff or defendant. In theory, that's fine. The line is open and close the case. And then when it came to a prevailing party, the judge clearly made it clear what it said. Here, as plaintiff, they're the prevailing parties. They want a one claim. You're well into your rebuttal time. We'll restore two minutes of your rebuttal. And let's add ten minutes to Mr. Slidinovich. Is that the proper pronunciation? It's close. Thank you, Your Honor. May it please the court. Just like mine, it's close. We'll add that time to you if you need it. You don't need to use it all up, though. Thank you. May it please the court. Let me start with the issue that was just being discussed, the order of proof issue for the trial. To clarify what happened with respect to Ultra Clean Holdings, Ultra Clean Holdings was very much a proper party in this case. Through the public pronouncements that were made by Ultra Clean Holdings, it was, in fact, the owner of the products that we were complaining about. We named them before we ever knew about the secretly filed DJ action in the Northern District. And we filed both of those parties. Now, the reason what happened... When you say secretly filed, how can you secretly file a DJ action? It's a public document. Well, what happened was we sent a notice saying, here, we're going to see you in 20 days if you don't stop your infringing activity. Now, within that 20-day period, they filed the suit and never served us during that period, nor did they notify us of the suit. On the 20th day, we filed, as we had promised, our infringement lawsuit in Delaware. But that's not secretly filed. Well, that's too strong a word. Unknown to us, at least, and not served upon. Unserved complaint, let's put it that way. It was an unserved complaint that we... We were following through on our commitment to sue on the 20th day. The Ultra Clean Holdings was never dismissed from the case by a motion. There was never any argument along the lines of what's being said today, that somehow they were a spurious or improper party. On the eve of trial, when we were notified that we would each have 18 hours to try our cases, we had a discussion with counsel for both holdings and service, Ultra Clean Service and Ultra Clean Holdings, and said, would you guys agree that if we dismiss for purposes of trial Ultra Clean Holdings, that Ultra Clean Holdings will, in fact, be bound by the judgment in this case? That way we both save some time fighting about this issue. And they agreed. So we did a provisional dismissal. They didn't go to trial, but they did end up in the judgment because they had stipulated in a court file stipulation to be bound by the judgment. So they were, in fact, a proper party, and they are, in fact, a party on appeal in this case. The Genentech and Micron cases dealt with the issue of forum. In this case, of course, Ultra Clean got its forum. The statistics that were presented in the article that was relied on, there is no adjustment in those, and the article itself points out that there are other factors that may relate to why those statistics lined up. But in any event, we don't think that's a proper basis for this kind of a motion. The trial court clearly has, as both Genentech and Micron pointed out, in the context of forum, it has discretion, and it certainly has discretion when it's talking about an orderly administration of a trial. And, of course, as Your Honors have pointed out, there was curative instructions given by the trial court, and the parties were, in fact, treated during the trial as being neutral to plaintiff and defendant. I would like to address, before we get into the substantive common surface issue, I'd like to address the respondent's, I'm sorry, appellant's reply brief on the issue of waiver of their claim construction arguments here on appeal. And very quickly, the trial court rejected both sides' proposed constructions. In fact, we had proposed a construction that had the language, different surfaces on a common plane. But that was rejected, as was UltraClean's, and it adopted a compromise or an alternative construction, which is the construction, a common surface, same surface, which can be divided or continuous. UltraClean could have lodged an objection. They didn't need to. Our 02 Micron case clearly says they don't need to lodge an objection, as long as the issues are thoroughly litigated in a Markman hearing, they're entitled to appeal. Your Honor, they never objected at that time. In fact, the word same surface is a term that was argued by UltraClean. So they never made clear that they didn't object to these constructions. And, in fact, they endorsed them by adding them into their- What do you mean they endorsed them? They never agreed that a common surface should be defined as a divided surface. This is not something that they agreed to, as far as I can see. If I'm wrong, please point me to the right place. Sure. In the record at A228, you'll find the jury instructions that were proposed by UltraClean. And those jury instructions contain the- Wait, proposed by UltraClean after the Markman hearing had already occurred? Well, of course they're going to propose jury instructions that are consistent with what the court already told them they have no choice about. They didn't agree to the undivided, and they clearly disputed that in the Markman proceeding. There's no need for them to ever dispute it again. It's futile. The district court has made his decision for purposes of preserving the issue for appeal. I guess we didn't see it that way, Your Honor, because the court kind of used a compromise. It adopted the same surface language, but it added the qualifier in order to harmonize with the specification that it be divided or continuous or divided. But they clearly, at all points, did not agree to the ability to have it be divided. To that portion, you're absolutely correct. And that's what they're appealing. Your Honor, I would only point out also that in the Markman, Praputnik, and Boyle cases, this court made clear that you have to preserve your objection to the claim construction, at least in your Rule 50 motion, which they did not do. All three of those cases are Rule 50 motion cases, where on the Rule 50A motion- In the Markman case, there wasn't a Markman hearing because the concept didn't exist yet. And so subsequently, we have O2 micro that comes out and says, as long as it's disputed clearly and unequivocally in a Markman hearing, then you've done enough to preserve it for appeal. Well, Your Honor, I just don't think that in this circumstance, when you have the trial court adopt a new construction, that gets with no objection to that. Also, we can't contradict our own established presence, and O2 micro is clearly on point. Let me address the same surface construction. The inventions here deal with the common surface in the context of gas panels and the surface mount technology that was being introduced and pioneered by Solarity in this industry. What you needed to have was a common surface that things would mount down from. Things like your active components, your valves, that kind of thing, and your bridging components, that they would mount down on a common surface, and that you had a common surface to mount up from, that your substrate would meet those common surfaces at this horizontal plane. In the context of the specifications, can those common surfaces be divided in this context? And they absolutely can. In the brief, I used the coffee table analogy, where you have a coffee table that has multiple tiles on it. I have this coffee table. It's got spacers in between the tiles, and there's different degrees of gap in between the tiles. I can set something on that surface, and I know where to set it on that top surface. In this case, in the context of gas panels and what they were trying to achieve at this time in the industry, there are multiple examples in the specifications of how this common surface can be continuous or divided. The court has corrected that there is also a concept of planarness to this. We offer that in our claim construction. It was not accepted. What are your portions of the spec that indicate the common surface could be divided? Is it Figure 20, among other things, that I pointed to earlier? That is probably the most substantial. There are a number of them cited in our brief, in both the 138 and the 215 patents. But Figure 20 clearly – But doesn't Figure 20 show three separate manifolds? Figure 20 shows – I'm sorry, Figure 17 is what I meant to be referring to. As an isolated bridging component. And then I'll come to Figure 20. Figure 17 is the generic classic bridging component, which is claimed in this patent. But the same surface in three different separate sections. Well, it's got – if you look at the two blocks at the bottom of the U-tubes, those would mount down onto the substrate. And Judge Chesney looked at this and other embodiments that showed a common surface that was divided. Because clearly there is a gap between the two blocks at the bottom. How do we know that this isn't, in Figure 17, connecting two separate manifolds? It is connecting two separate manifolds. That's exactly what it's doing. I don't understand. I mean, you know, I thought the theory here was that there was a single manifold that is in separate pieces. The claims talk about separate manifolds. To the extent that there's a division here, why aren't we dealing with separate manifolds instead of separate pieces of one manifold? Well, in the bridging component context, we're talking about bridging from one manifold to the other manifold. By definition, you have at least two manifolds in the claims. And if you look at Claim 1 and 6, what they're talking about is the block on one side, which has an inlet or maybe an outlet, transporting the gas. What I'm saying is that this shows not two separate manifolds, but two pieces of a single manifold, right? Are we looking at 17? Yes. That doesn't show any manifolds, but there would be two manifolds at the bottom of both of those. What I don't understand is the difference between multiple-piece manifolds and separate manifolds. Help me. Okay. We don't have any claims on the 215 patent about multiple-piece manifolds, but we do have examples in the specification of a multiple-piece manifold. Figure 6 shows a three-part manifold, which has screw parts on both sides when it's assembled, and this one happens to be made of a solid block. So that would be an example of a three-part manifold. Figure 6? Yes. If you can imagine the bridging component that would come off the top of that, that would be where you have a multi-piece manifold. How does Figure 6 show separate pieces? I don't understand that. Well, 522, 520, and 500, when all three of those are assembled, you have your manifold. It's a single-piece manifold. A single block, right? If the word terminology were single block, it would be a single-block manifold, correct, but it's a single manifold. What we're talking about in 215 is the bridging component from one of these or any of these shaped manifolds to another one. What about Figure 7? That's multiple manifolds. That is a single manifold, Your Honor. At least it's in a single piece. It's a single piece. Yes. But various manifolds. That would be one manifold, right, in much the same way? Is that one manifold? I think it would be one manifold under the Claim Construction of the Court. Yes, I believe that would be one manifold. Why isn't the question of whether it's one piece or multiple pieces determined by whether the block is in one piece or multiple pieces? There's no limitation as to these manifolds being blocks in the claims. That's something that the appellant came up with at trial and unsuccessfully argued for. Really, the key point is that they are carrying gas from one place to another and have an inlet and an outlet. That's the key aspect of a manifold as it relates to this kind of a system, is that it's carrying gas from one active device to another in some form or fashion. The one-piece limitation is something that UltraClean has been trying to insert into that, but it's not part of the claims in this case, at least the ones that are in the 215 patent. The 215 patent is talking about bridging components that have a common surface at the inlet and outlet of the bridging component. So an example- I'm trying to figure out whether something's a multiple-piece single manifold or two separate manifolds. Well, if you go to Figure 20, that's where we started, and if you look at Item 1344, which is the bridging component shown on Figure 20, you'll see the numbers 1346 as to one manifold and 1306 as to another manifold at the bottom of both halves of that 1344. Those are separate manifolds. They are. You can see there's a very faint line. But that doesn't answer my question. What's the difference between a multiple-piece manifold and two separate manifolds? Well, a multiple-piece manifold has to be able to function on its own as a manifold. Two separate manifolds have two independent functions. But you said all that was required is it moves gas. Yes. So why does a multiple-piece manifold, in your view, constitute two separate manifolds since each part of that is moving gas? I see what you're saying now. So if you had two manifolds next to each other, attached to each other, those could, in fact, be a single manifold. They would also be two independent manifolds. The claims in this case are comprising claims. And so, in fact, what you do have is you have a serial set of manifolds along a gas path, and you have a bridging component that attaches one to another. And, in fact, one of the arguments that UltraClean had unsuccessfully raised below is that you have to consider all of those serial manifolds as a single manifold. They're all part of one gas stick with one inlet. And you said they were separate manifolds. Correct. They are both separate manifolds because there are individual manifolds within that structure that satisfy the court's manifold construction. Would they operate as separate manifolds if they were separated out without the bridge? They could. Absolutely. That's correct. They would carry gas from an inlet to an outlet, and they would allow you to mount an active device or some other structure on top of it. But how would that meet the requirements of Claim 1, then, of the three manifolds? Well, Claim 1 has, I believe, two manifolds, a first and a second manifold. Right. And you would have, as you do on, if you look at Figure 20, what you have is a first manifold, which is 1306, a second manifold, 1346, and you have a bridging component, 1344, that bridges from one manifold to the next manifold. In that particular case, then, you would have only two manifolds and not three. There's actually a third manifold way over to the right, but that's not involved in the bridging activity. There's actually another bridging component here. It's not claimed on Claim 1, which is 1362. That device actually bridges from the second manifold to the third manifold. So without the section going to the far right on Figure 20, this would just be a two-manifold type of a structure? Yes, Your Honor. That's correct. With the same surface? Well, if we're talking about the same surface of the bridging component, you have the block that's at the bottom of 1344 on the left-hand side, the block that's at the bottom of 1344 on the right-hand side, and those under the court's construction are the same surface, but they're a divided common surface. They're a common surface. Yes. And let me explain that a little better than I have. If you take that structure and you turn it upside down, you'll have these two component parts of it at both ends. You can set something on it, just as in my analogy of the coffee table. You can set something on it and you can mount something to it. You could also, if you can imagine 1344 and the two blocks, you could make that a solid block all the way across so that you would have the bridging on top and you would have a solid block all the way across from the bottom. That would be a continuous common surface. This example in 1344 is a divided common surface, which is clearly claimed in the- Well, how can you have separate manifolds without a division between them? You would have always a division of some sort between them, right? That's what you're saying. Yes. In order to have a first manifold and a second manifold, there has to be a division between them, right? Well, I would understand their argument would be, maybe I'm wrong, but I think that their argument would be, well, wait a minute, no. What's disclosed here is a single block. It's not actually two divided pieces. It's a single block that has carved out multiple manifolds in the block, but it's a single block. Well, there's actually a physical separation, and it's clear from the specification, between 1306 and- I mean, there are just two blocks that are set next to each other. That's how this is. In fact- It's not a single block. Frankly, they're held together because you have the bridging component gives it a bit of structure. There may be something underneath also that's giving it some structure, but they are separate. If you want to call it chunks of metal, they're separate chunks of metal. But without the bridging component, it would be two separate manifolds. That's correct. No, but wait, you're saying- It's still two separate manifolds, but you have bridging going from one to the other, so gas can get from one to the other. So it's not a continuous surface. It is because there, in fact, must be a gap because these are two separate pieces pushed together. I mean, whether they're glued or screwed or whatever is kind of irrelevant. It's not a single block. To take that further, you could take this entire structure at Figure 20 and call that a single manifold. You could do that. But you also have component manifolds within that structure, and we have comprising claims in this case. So that is the reason that it's proper for an expert, as our expert did, to analyze the first and second manifolds that are within this stick and the bridging component, which bridges the two of them. On the issue of the one-piece manifold, there is obviously a claim term differentiation issue that the Court has recognized in terms of the use of the term one-piece manifold and other claims in this family of patents. I'd also point to the Figure 6, which is, as I've described, it's three component pieces that make up that manifold. The reason I think that's significant is that UltraClean was successful in dismissing, in this case, on summary judgment, the one-piece manifold claims, taking exactly the position that if you have to put three things together to make a single manifold, as their product does, then it's not a one-piece manifold, it's a three-piece manifold. And so UltraClean can't be heard to say on appeal... What are the parts that are put together to make the manifold? In the Predator device? Yes. You have a tube underneath and you have two... Take the picture again. Do you have it handy? That'd probably help. I can show you. If you turn to A2257... And what you'll see are, and if you can imagine, if you look at the very bottom of the central structure, you see three tubes sticking out on the bottom. Are those three separate manifolds? They are three separate gas sticks, and they would qualify as manifolds, yes. And those... The thing at the top is the bridge. That's correct. The structure at the top looks a lot like the bridging component described in Figure 20 of our patent, is their bridge. And what it's doing, just so you can understand, if you see the tube on the bottom, these are cutouts from their longer gas sticks. And the tube at the bottom, the three tubes you see sticking out at the bottom, those are the line of the gas sticks. That's the direction that the gas sticks would go. So in this case, A2257, this is bridging from one gas stick, one manifold that's going this direction, to another gas stick or manifold that's going in this direction. So it's a transverse bridging component. There are also examples of an aligned bridging component in similar fashion. You see on this that you have the two common surfaces that mount down, in this case actually three common surfaces, mount down to the three manifolds that are lined in this direction. And that's how that meets the claim of two claims that are... How are the inlets and the outlets on a common plane? Well, the term, they are on a common plane. We believe that to be the case. I don't understand. I thought those holes at the end there are either inlet holes or outlet holes. If you can imagine, look at the structures, the bridging structures, just the bridging structures that will screw down to the manifolds. There is an inlet to the bridging structure at that place where it's screwed down, and there is an outlet to that. So we're only concerned with the inlets and the outlets to the bridging structure? Correct, because it's accessing the common surface, the inlet and the outlet accessing common surface of the bridging component. That's the way the claim reads. So just as in the case of Figure 20, or in Figure 17, where you have the common surface being the two places that are on the same plane that are divided from each other. I don't understand. In Claim 1 it says that the first manifold having an inlet and an outlet accessing a common surface. That seems to suggest that each manifold has to have an inlet and an outlet on a common surface. It's quite apart from the bridging component. How does their thing have an inlet and an outlet in a first manifold on a common surface? This is a little hard to see in the photograph, but if you look at the photograph at 2257, you'll see little holes on the top, and they're hard to see, but there are little holes on the top at the same horizontal latitude as where the bridging component meets that manifold. So the gas would come in and go back up to the top, and it would actually hit a... If this were fully populated, you would have an active component sitting on the very top right next to the bridging component. So there is an inlet at the top there and an outlet at the top there. They're both on that same surface of the manifold. This thing down at the bottom has just been cut. I'll tell you both. My reaction is you could do a lot better job describing this in your briefs, and we wouldn't have had these problems if you were all arguing, if you'd both done a better job of describing the technology and what's going on here. Your Honor, one thing that may be of help is our expert did go through on a matching element by element of the... Yeah, I wouldn't spend too much time on that. I thought his testimony was pretty confusing. Okay, well, he actually wrote a document out that had the A, B, C and matching element to element that may be of some help. I don't know that... Are you talking about the A2976 and the A29... Yes, Your Honor. ...77? Yes, A282975. The exhibit 338. Correct, Your Honor. Correct. And also, for the aligned direction, there is an A2973, which does a similar thing of matching by specific element to specific element, specific location on the devices that were... But you still had to go in and dig deep on that one. I agree with Judge Dyke that trying to put all the technology on this case together was very, very difficult, even with some of the exhibits that were submitted by your experts. It was not very clear. And I'm referring specifically to that exhibit 338 that was submitted as part of your expert witness testimony. Your Honor, it was a challenge because these are... But I would like to have done a better job. It's just a challenge to get this into the record that with these mechanical patents, they're difficult to verbalize without having something to point to and show this here and that there. I understand that. Thank you very much. Your time is up. Thank you. Your Honor, I think I'll just do my best. The claim states that there's two different manifolds. The first manifold having an inlet and outlet accessing the common surface of the first manifold. If you look at Figure 20, what that's referring to, you have three separate manifolds, first, second, third.   you have three separate manifolds, first, second, third. Inlets and outlets have to access the common surface of that manifold. Those are all one-piece manifolds. That is not divided manifold. It's not a common surface, meaning the same surface, continuous undivided surface. Of that one manifold. Of that one manifold. Right. So for the manifold at 1306, all of the inlet, at least one inlet and one outlet, have to be on the common surface of what is 1306. That's correct. And then for 1346, there has to be at least one that's on the common surface. That's correct. Okay. That's what the claim requires, and the same thing for a bridging component. The specification allows those type of structures. If you look at the appendix A2329... Wait, but the bridging component here on Figure 20 says a bridging component having an inlet and an outlet assessing a common surface of the bridging component. So where would that be on Figure 20? There are three types of bridging components here. The one that has a common surface... 1344. Look at 1344 for me. 1368 would be a bridging component. It bridges 1346 and 1372, those two manifolds. No, but I want you to look at 1344. 1344. That would be what the patent refers to as Figure 17 as a connector component. That's not a bridging component? Well, it can be described as a bridging component as well. There's three embodiments of a bridge component. I'm just trying to see where the inlet and the outlet are on the same common surface given the way you want us to define it in light of this. You see the problem. Yes, and for that particular bridging component, it does not be covered by the claims. There are three bridging components in here. This is one embodiment that's dedicated to the public pursuant to Maxwell. So you don't think this bridging component is covered by the claim? That's correct. You agree that it doesn't show a common surface the way you define common surface? That's correct. Okay. So if you look at the bridging component 1368, which is bridging the second and third manifold, there you see the inlet to the bridging component and the outlet to the bridging component on the common surface. It's a block, and there's also a jumper block you can't see. There's 1334. It's a jumper block, and it would go off into space. That's another block bridging component that has an inlet and outlet accessing a common surface of the bridging component. So if we were to conclude that 1344 is a bridging component within the meaning of the claims, you're wrong about the claim construction, and the judge is right, correct? I would say that you'd have to ignore the plain import of the term, but if that would be covered under the claim, then you'd have to redefine the claim altogether. Isn't my statement correct? I don't think so, Your Honor. 1344 is assumed hypothetically. I understand you say it's not a bridging component within the meaning of the claims, but if we find that it is a bridging component, then your claim construction argument is wrong and the judge was right. I would say the judge needs to redefine the claim interpretation and be a common plain. That would be the case because I don't think that you can, under any circumstances, have a same surface that's divided. I don't think you're answering my question. So the judge is wrong also. I think both claim constructions are wrong then, Your Honor. I think there has to be an alternative third construction that would allow for that possibility because the judge's claim construction is just not a physical possibility. But if 1344 is a bridging component, the inlet is on one side, the outlet is on the other, and they're not on, in your view, in a common surface. So they are on a common plain. They're on a common plain. I do not believe that is a bridging component having an inlet and outlet accessing a common surface of the bridging component. You don't dispute that's a bridging component. You just say it's not what is claimed in Claim 1. That's correct. And you'd say that this embodiment is not read out of Claim 1 because of the second bridging component. That would be your argument. Exactly. There are two other bridging components in this picture that would be covered under Claim 1. 1344 would not be percent of the proper claim construction. Thank you, Mr. Andrews. Thank you. The case is submitted. All rise. The honor report is adjourned tomorrow morning at 10 o'clock a.m. Good job, Keith. I don't want competition again in my life. I'm with you. I'm with you. I'm actually going to New York. Thank you.